IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CR3014 |
| | ) | |
| v. | ) | |
| | ) | |
| LAANTHONY CLETAE CAIN, | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

LaAnthony Cletae Cain (Cain) has filed a motion under 28 U.S.C. § 2255 challenging his conviction and sentence for involvement in a drug conspiracy involving both crack and powder cocaine. (Filing 73.) He makes 15 claims. After initial review, I find that none of Cain's claims have merit.[1]  *See*, *e.g.*, *Watson v. United States*, 493 F.3d 960, 963 (8th Cir.2007) (no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.") (internal citations omitted).

---

[1]When a § 2255 motion is forwarded to a judge,

> [t]he judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.  If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Accordingly, I will dismiss the section 2255 motion with prejudice and enter judgment.  My reasons for doing so are briefly set forth below.

### *I.  BACKGROUND*

In January of 2006, Cain was charged with conspiracy to distribute 50 grams or more of crack cocaine and an unspecified amount of powder cocaine.  (Filing 1.)  Gregory C. Damman, an experienced criminal defense lawyer, was appointed to represent the defendant.  (Filing 5.)  Cain entered a plea of not guilty. (Filing 4.)

Both sides waived a jury trial. (Filings 17 & 19.)  Cain's waiver was based on a letter that Cain had written to me, and that letter was attached to the motion that Damman submitted. (Filing 17, Attach. 1.)  The handwritten letter was well-reasoned.  Essentially, Cain wanted to present a technical defense that there was no conspiracy and he was fearful that jury would "receive *delicate information* [and] still not understand what exactly a conspiracy is." (*Id.*) (Emphasis added.)  He also believed that a judge would be better able to evaluate the credibility of the cooperating witnesses.  (*Id.*)  Before accepting Cain's waiver, I questioned him under oath and determined that the waiver was knowing, intelligent and voluntary.  (Filing 54 at CM/ECF pp. 2-4.)

During June of 2006, a two-day non-jury trial was held.  (E.g., filings 21-22.)  The government presented (1) seven cooperating witnesses who implicated Cain, (2) the fruits of the execution of a search warrant that connected Cain to four "baggies" of cocaine stored in a safe and (3) the results of a chase the culminated with a police officer finding crack cocaine that Cain had attempted to throw away while running away from the police.  (Filings 54 & 55.)

Cain presented no evidence.  This was an intelligent tactical decision.   First, given the strong evidence showing that Cain was at least to some degree involved in


drugs (he admitted as much in his letter to me when he spoke about "delicate information"), Cain faced a potential perjury charge and an obstruction of justice enhancement if testified and lied about drug use. Second, it very doubtful that his defense would have been assisted by his testimony or the presentation of evidence because that defense turned on the straightforward premise that while he may have been involved as a small-time consumer of drugs there was no conspiracy and the cooperators were exaggerating to help themselves. Thus, his counsel reasonably elected to argue that the cooperating witnesses were not believable, that they had cooked up their testimony to help themselves, that the conspiracy the government alleged did not exist and that, at most, the government had established only a "buyer-seller" relationship where Cain was simply a causal consumer. (Filing 55 at CM/ECF pp. 328-339.)

On June 27, 2006, I found beyond a reasonable doubt that a conspiracy to distribute crack and powder cocaine existed between June 1, 1996 and March 31, 2005, that Cain was a member of that conspiracy and that he was guilty as charged. (*Id.* at CM/ECF p. 343-44.) I also specifically found beyond a reasonable doubt that Cain was responsible for 50 grams or more of crack cocaine. (*Id.* at CM/ECF p. 344.)

A probation officer prepared a detailed and thorough presentence report (PSR). (Filing 36.) Among other things, the officer found that: (1) Cain was responsible for 1.5 kilos of crack and 500 grams of power cocaine and that converted to 30,100 kilograms of marijuana for a base offense level of 38 (PSR ¶¶ 34, 40)[2]; (2) no other

---

[2]Cain has *not* filed a motion pursuant to 18 U.S.C. § 3582(c)(2) seeking a reduction of his sentence in view of the recent retroactive amendments to the United States Sentencing Guidelines pertaining to crack offenses. Therefore, I have no occasion to determine whether he would be entitled to such a reduction if such a motion were filed. I observe, however, that the combination of crack and powder cocaine in this case and the related equivalency calculations under the relevant retroactive amendments are complex. Nonetheless, given the calculations and

adjustments to the offense level applied and Cain's total offense level was 38 (PSR ¶ 47);  (3) Cain's criminal history category was IV and that criminal history category included auto theft (as a juvenile), destruction of property, operating a motor vehicle while suspended, three assault convictions, possession of marijuana less than an ounce and commission of the federal offense while Cain was on state probation (PSR ¶¶ 50-70); (4) Cain, who was 25 years of age (PSR at CM/ECF p. 2 under "Identifying Data"), had a horrible life as a child leaving home when he was only 11 years old (PSR ¶¶ 73-77); (5) Cain had completed drug treatment when he was 19 years old  (PSR ¶ 79), but he continued to use marijuana and powder cocaine daily (PSR ¶ 80); (6) the defendant had gone to the 10th grade in school and he later obtained a GED, but he had never held a real job aside from working as a "temporary" (PSR ¶¶ 81-82); (7) Cain's range for custodial purposes under the Guidelines, given a total offense level of 38 and a criminal history category of IV, was 324 to 405 months in prison and he faced a statutory minimum sentence of 10 years in prison (PSR ¶¶ 88-89.)

Damman filed objections to the presentence report and a motion for deviation and variance. (Filings 27 & 29). He also filed a downward departure (filing 30) under the Guidelines based on the premise that Cain's criminal history over-represented what

---

conversion set out in the PSR, which I adopted at sentencing, one might argue that Mr. Cain is entitled to a 2-level reduction and concomitant sentencing reduction pursuant to Amendment 715. *See* Amendment 715 (effective May 1, 2008), available in *United States Sentencing Commission Guidelines Manual*, *Supplement to Appendix C*, at p. 258 (explaining the reasons for the amendment and addressing the "sentencing anomaly in which some offenders have not received the benefit of the two-level reduction provided by Amendment 706 because of the conversion of cocaine base to its marijuana equivalent . . . ."). Amendment 716 appears to have made Amendment 715 retroactive. *See* Amendment 716 (effective May 1, 2008), at *id*. pp. 258-259. In any event, should Cain file a motion under 18 U.S.C. § 3582(c), I would surely appoint counsel to help me sort this out. Since we typically appoint the Federal Defender in crack reduction cases, and to provide a "heads-up," my staff shall send a copy of this memorandum and order to David Stickman, our Federal Public Defender.

he done. He supported these points with a well-written brief. (Filing 28). He also made an extremely good sentencing presentation at the evidentiary hearing. I complimented him for it: "Mr. Damman, I want to compliment you on the hard work that you've put into this case on a number of different levels. I found your brief very well written, in particular with respect to the sentencing issues, very thoughtful, and I appreciate your help." (Filing 56 at CM/ECF p. 37.)  I agreed with Damman that Cain's criminal history was over-represented and accordingly ruled that the proper criminal history was III rather IV. (*Id.* at CM/ECF p. 22.)

On the other hand, and based on the evidence presented at trial, I denied the drug quantity objection and found that "the proper . . . base offense level is as stated in the presentence report." (*Id.* at CM/ECF p. 12.)  In other word, I found that Cain was responsible for 1.5 kilos of crack and 500 grams of power cocaine and that converted to 30,100 kilograms of marijuana for a base offense level of 38. (PSR ¶¶ 34, 40.)  Ultimately, I concluded that the proper criminal history was III and the total offense level was 38 resulting in a custodial range under the Guidelines of 292 to 365 months. (Filing 48.)

On September 26, 2006, I sentenced Cain to 292 months in prison and 5 years of supervised release. (Filing 47.)  At the time sentence was pronounced, I stated that I was imposing the sentence to "reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment and to afford deterrence, *realizing the guidelines are advisory and considering all of the statutory goals of sentencing . . .*" (Filing 56 at CM/ECF p. 38.)  (Emphasis added.)

Cain took a timely direct appeal. Although he requested a new lawyer, the Court of Appeals denied Cain's request. (Filing 59.) Accordingly, Damman prosecuted the appeal. On June 6, 2007, and after hearing the oral arguments of the lawyers, the Court of Appeals issued a published opinion denying the appeal. *United States v. Cain*, 487 F.3d 1108 (8th Cir. 2007).

In particular, the Court of Appeals found that the evidence was sufficient to convict Cain, that any variance in the indictment did not prejudice him, and that regardless of the number of conspiracies, the government proved beyond a reasonable doubt that Cain was involved in all of them. *Id.* at 1111-1114. In addition, and rejecting the claim that Cain should have received the mandatory minimum sentence of 10 years, the Court of Appeals ruled that the 292-month sentence I imposed was reasonable within the meaning of the *Booker* decision. *Id.* at 1114-1115 (citing *United States v. Booker*, 543 U.S. 220 (2005)). In arriving at that conclusion, the Court of Appeals also rejected the defense assertion that there was a sentencing disparity because Cain's offense involved crack cocaine. *Id.* at 1114 n. 2.

The Court of Appeals' mandate was filed on June 27, 2007. (Filing 66.) Cain filed a petition for writ of certiorari and the Clerk of the Supreme Court notified the Clerk of the Court of Appeals of that filing on August 7, 2007. (Filing 67.) (Filed August 13, 2007.) On November 26, 2007, the Supreme Court denied the petition for writ of certiorari. (Filing 69.) (Filed December 28, 2007.) *See Cain v. United States*, 128 S. Ct. 648 (Nov. 26, 2007).

Cain barely beat the statute of limitations. Cain placed his 2255 motion in the prison mailbox on November 26, 2008. (Filing 1 at CM/ECF p. 24.) Although the 2255 motion was not received or filed in this court until December 1, 2008 (filing 1 at CM/ECF pp. 1 & 24), Cain's motion was timely (within the 1-year statute of limitations) because federal prisoners desiring to file 2255 motions receive the benefit of the "prison mailbox rule." *See*, *e.g.*, *Grady v. United States*, 269 F.3d 913, 916 (8th Cir. 2001) (a document is timely filed is if it is deposited in the prison's internal mail system on or before the last day of the deadline; applying rule to section 2255 motion).

On November 28, 2008, but before his 2255 motion was received in this court, Cain filed a motion to amend, which he described as a "'placeholder motion.'" (Filing 72 at CM/ECF p. 1 & n. 1.) The motion was signed on November 21, 2008. (*Id.* at

-6-

CM/ECF p. 3.) He asked that I hold his 2255 motion (a motion that had not been received or filed as of November 28, 2008) in abeyance pending the submission of amendments to clarify the legal and factual bases of his motion. He stated that it would take him 30 days to complete his work. (*Id.* at CM/ECF p. 2.)

On December 2, 2008, and after Cain's 2255 motion was received and filed, I denied the "placeholder motion" without prejudice. Among other things, I stated:

> The court declines to grant the defendant open-ended permission to file an amended § 2255 motion. It will only consider a motion for leave to amend that specifically identifies the proposed amendments. *See* Nebraska Civil Rule 15.1(a) ("A party who moves for leave to amend a pleading . . . shall file as an attachment to the motion an unsigned copy of the proposed amended pleading. Except as provided in these rules or by leave of court, the proposed amended pleading must be a complete pleading which, if allowed to be filed, supersedes the pleading amended in all respects; no portion of the prior pleading may be incorporated into the proposed amended pleading by reference. The motion for leave to amend shall set forth specifically the amendments proposed to be made to the original pleading, state whether the motion is unopposed, and identify the amendments in the proposed amended pleading.").
>
> The defendant's motion for leave to amend therefore will be denied without prejudice to the filing of a motion that complies with our local rules. However, the court will not delay its initial review of the defendant's § 2255 motion in anticipation of the filing of another motion for leave to amend.

(Filing 74 at CM/ECF p. 2.) (Footnote omitted.)

As of the date of this memorandum and order, no motion to amend has been filed. Indeed, more than a month has passed since November 21, 2008 when Cain signed his motion and represented that the work on his amendment would be concluded "within the next 30 days . . . ." (Filing 72 at CM/ECF p. 2.)

## II. ANALYSIS

While failing to present specific facts, as opposed to conclusions or legal arguments, Cain asserts 15 claims. To do so, Cain used a copy of A.O. Form 243 when he filed the motion. *Compare* filing 1 *with* A.O. Form 243 (Rev. 10/07), available at http://www.ned.uscourts.gov/forms/. (Click on "Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.") In that form, the filer is instructed "not argue or cite law. Just state the *specific facts* that support your claim." *Id.* at p. 5 ("Ground One" and "Supporting facts.") (Emphasis added.) Cain's motion contained this admonition as well. (E.g., filing 1 at CM/ECF p. 7.)

Apparently realizing that he was running out of time under the statute of limitations, Cain filed a generalized motion with none of the required specific facts. Before he filed that 2255 motion he prematurely sought leave to amend. I denied the motion for leave to amend, for among other reasons, because I was unwilling to assist Cain's attempt to avoid the statute of limitations by submitting a non-conforming 2255 motion while first seeking an open-ended opportunity to amend. *See*, *e.g.*, *Green v. United States*, 260 F.3d 78, 82-83 (2d Cir. 2001) (a district court may grant an extension of time to file a motion pursuant to § 2255 only if (1) the moving party requests the extension upon or after filing an actual § 2255 motion, and (2) "rare and exceptional" circumstances warrant equitably tolling the limitations period). With the foregoing in mind, I now turn to Cain's (unamended) 2255 motion.

Condensed and summarized, Cain's 15 claims are described below:

1.      Counsel was ineffective because counsel failed to advise Cain "as to all facts and law relevant to his decision to plead not guilty and proceed to bench trial." (Filing 1 at CM/ECF p. 7.)

2. Counsel was ineffective because he did not move to suppress the evidence or move to dismiss the indictment. (*Id.* at CM/ECF p. 8.)

3. Counsel was ineffective because he did not present exculpatory evidence and failed to object to unlawful or inadmissible evidence. (*Id.* at CM/ECF p. 9.)

4. Counsel was ineffective because he failed to advise Cain of his right to testify at trial. (*Id.* at CM/ECF p. 10.)

5. Counsel was ineffective because he failed to object to the prosecutor's improper closing argument. (*Id.* at CM/ECF p. 11.)

6. Counsel was ineffective because he failed to present evidence and legal authority material to sentencing and failed to attack unreliable evidence. (*Id.* at CM/ECF pp. 11-12.)

7. Counsel was ineffective because he failed to support a motion for downward departure or variance under 18 U.S.C. § 3553(a). (*Id.* at CM/ECF p. 12.)

8. Counsel was ineffective because he failed to attack at sentencing and on direct appeal the sentencing disparity created by the difference in treatment between crack and powder cocaine. (*Id.* at CM/ECF p. 13.)

9. Counsel was ineffective because he failed to present the strongest issues available in the direct appeal and to preserve viable issues for collateral review. (*Id.* at CM/ECF p. 14.)

10. Counsel was ineffective because he had a conflict of interest. (*Id.* at CM/ECF p. 15.)

11.     Counsel was ineffective due to the cumulative impact of counsel's errors. (*Id.* at CM/ECF p. 16.)

12.     Cain's sentence violated the Constitution because it was based upon facts not charged in the indictment, not submitted to a jury and not proven beyond a reasonable doubt and also because the court treated the Guidelines as "mandatory" and did not give sufficient consideration to the factors set forth in 18 U.S.C. § 3553(a). (*Id.* at CM/ECF p. 17.)

13.     Cain's sentence violated the Constitution because the judge failed to treat the crack Guidelines as advisory. (*Id.* at CM/ECF p. 18.)

14.     Cain's sentence violated the Constitution because the judge lacked the knowledge that the Guidelines were advisory. (*Id.* at CM/ECF p. 18.)

15.     Cain's conviction and sentence violate the First, Fourth, Fifth, Sixth and Eighth Amendments to the Constitution. (*Id.* at CM/ECF p. 19.)

First, none of Cain's claims are supported by specific facts. For example, Cain claims that his counsel labored under a conflict of interest but he provides no details. All of Cain's claims are based upon generalizations. For that reason alone, his 2255 motion will be denied under long standing Eighth Circuit precedent. *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (affirming summary dismissal of section 2255 motion and holding that a motion which consists only of conclusory allegations unsupported by specifics or allegations that, in face of the record, are wholly incredible is insufficient).

Second, and regarding the claims of ineffective assistance of counsel, Cain has wholly failed to present any information to suggest that his able lawyer engaged in malpractice or that Cain was prejudiced by anything that devoted lawyer did or did not

do. *See*, *e.g.*, *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (a convicted defendant's claim that counsel's assistance was so defective as to require reversal has two components: first, the defendant must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the Sixth Amendment and, second, the defendant must show that the deficient performance prejudiced the defendant in that counsel's errors were so serious as to deprive defendant of a reliable result); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir.1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; ruling that no evidentiary hearing is required where (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact).

In fact, the record frequently rebuts Cain's generalized assertions. For example, Cain's first claim that his counsel misadvised him about seeking a bench trial is refuted by Cain's handwritten letter to me where he expressed thoughtful and intelligent personal reasons for seeking a bench trial and my "on the record" examination of Cain that established his jury waiver was knowing, intelligent and voluntary. Likewise, and by way illustration, Cain's assertions that his counsel erred at sentencing are plainly refuted by the record. That is, counsel did file departure[3] and variance motions, counsel did urge me to consider the § 3553(a) factors and the advisory nature of the Guidelines, and counsel did challenge at sentencing and on direct appeal the disparity between crack and powder cocaine.

Third, Cain's claims that I erred at sentencing because I did not understand the advisory nature of the Guidelines or my discretionary powers are belied by the record.

---

[3]In fact, I reduced Cain's criminal history because of counsel's forceful advocacy.

The sentencing transcript and related documents are replete with references to my awareness that the Guidelines were advisory and that I was required to examine the statutory goals of sentencing when I exercised my discretion at sentencing. Indeed, in this case, the Court of Appeals found that "the district court's sentence was reasonable, per *United States v. Booker*, 543 U.S. 220 (2005)." *United States v. Cain*, 437 F.3d at 1115. Furthermore, Cain may not litigate again sentencing issues that were decided on direct appeal and that bar appears to apply to each and all of Cain's sentencing claims advanced in this litigation. *See*, *e.g.*, *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001) (because inmate's claim that judge who sentenced him was incompetent was decided against inmate on direct appeal, it could not be relitigated in a § 2255 proceeding).

Finally, in stray citations (e.g., filing 72 at CM/ECF pp. 17-18), Cain refers to *Kimbrough v. United States*, --- U.S. ----, 128 S.Ct. 558 (2007) (a district court may conclude that the Guidelines' crack/powder cocaine disparity yields a sentence "greater than necessary"). *Kimbrough* was decided on December 10, 2007. Cain's direct appeal was final on November 26, 2007, when the Supreme Court denied his petition for writ of certiorari. *See Cain v. United States*, 128 S. Ct. 648 (Nov. 26, 2007). To the extent that Cain asserts that *Kimbrough* is retroactive, he is wrong. Like *Blakely* and *Booker*, the *Kimbrough* decision is not retroactive. *See*, *e.g.*, *United States v. Davis*, 2008 WL 1914352 at * 3 (D. Neb., April 28, 2008) (*Kimbrough* would not be retroactively applied on collateral review under section 2255 inasmuch as *Blakely* and *Booker* were not applied retroactively).

IT IS ORDERED that Cain's 2255 motion (filing 73) is denied with prejudice. A separate judgment will be issued.

December 30, 2008.    BY THE COURT:

    *s/Richard G. Kopf*
    United States District Judge